# COURT OF ERRORS AND APPEALS.

———

The ASSOCIATES OF THE JERSEY COMPANY, appellants, and THE MAYOR AND COMMON COUNCIL OF JERSEY CITY and JOHN C. MORGAN, respondents.

The rights acquired by "The Associates of the Jersey Company" by the deed from Van Vorst to them and the act incorporating the Company.

The Chancellor, on answer, dissolved the injunction granted on the reading of the bill, on the ground that the remedy at law was adequate ; and gave no opinion on the questions involved as to the respective powers of the complainants and the Mayor, &c., of Jersey City.

The order dissolving the injunction was appealed from.

*I. W. Scudder, B. Williamson* and *P. D. Vroom* for the appellants.

*W. Rutherfurd* and *A. Whitehead* for the respondents.

RANDOLPH, J.   This case comes before us on an appeal from an order of the Chancellor dissolving an injunction which had been granted restraining the defendants below from removing a small building belonging to the complainants and in the tenure of Samuel Davidson.   If we look only at the immediate injury complained of, viz: the removal of a fence, the threatening to prevent its re-erection, and also to prevent the removal of the

small building or office, we must concur with the Chancellor in dissolving this injunction, for certainly there is no irremediable injury, which the courts of law cannot correct or the respondents answer for in damages.   But the removal of this fence, and the acts and threats complained of, were in derogation of certain important rights claimed by the appellants, and in accordance with certain other conflicting rights claimed by respondents. These rights and claims are all set forth in the record of this case, and have been fully argued by the respective counsel.   The facts on which they are based are undisputed and admitted in the pleadings, and the questions themselves being of grave importance, and arising as they do on conflicting claims of two co-existing corporations, involving the rights of ferriage, wharfage, title to land reclaimed from the Hudson river, the right of widening streets and taking of private property for public use in one of our largest cities, it must be manifest that unless speedily settled irremediable and permanent injury must result to the freehold and to the rights of parties litigant and to others claiming from or through them; and some of these questions are of such a character that it would be exceedingly difficult, if not impossible, to obtain adjustment and relief in a court of law.   In view of all these matters, without entering into an enquiry how far a court of equity may go in restraining a party from the committing of mere trespass or waste, I think the case is of such a character that this Court should go behind the simple act or injury for which the injunction was originally granted and dissolved, and look into the merits of the cause itself, as it appears in the record.   I feel the more inclined to take this, perhaps unnecessary labor, because both parties are exceedingly anxious to have their conflicting views settled by adjudication, and have now pending in other courts of the State several suits and applications involving these disputed matters, all of which are now fairly presented to this Court, and according to the view which I shall take of the case, may be directly and legitimately decided by the highest judicatory in the State, and thus settle the conflicting claims of these parties and put an end to litigation.

The injunction cannot be dissolved on the mere ground that

all the equity of the bill has been answered, for the facts stated in the bill are substantially admitted in the answer; and if the complainants have any equity whatever in their case then we cannot dissolve on the answer alone, but must enquire and ascertain whether the bill or bill and answer set forth any cause for the consideration of the Court.

The complainants' bill alleges, that in eighteen hundred and four Cornelius Van Vorst conveyed to Anthony Dey, a tract of land known as Powles Hook, laying several hundred feet on the Hudson river, together with the right of ferriage and all the grantor's right to the land under water opposite said tract; the grantor giving a warrantee title as to the upland, but not as to that under water, or the right of ferry independent of or separate from the soil. That afterwards, by certain conveyances, said premises became vested in Richard Varrick, Jacob Radcliff and Anthony Dey, who applied to the Legislature and on the 10th of November, A. D. 1804, obtained an act by which they and their associates in interest became incorporated by the name of "Associates of the Jersey Company," who are the complainants and appellants in this cause. That they had by their act of incorporation conferred on them, general corporate powers, the right to hold the real estate conveyed by Van Vorst, to lay out streets and squares thereon for a city, to govern, level and regulate the same, to order and regulate the building of docks, wharves, and piers and storehouses, make by-laws, &c. The bill further alleges that complainants in pursuance of their authority, employed a skillful surveyor by the name of Mangin, who laid out the premises into streets and squares for a city, and made an accurate map thereof, which was filed and has since become a record by authority of law. That the squares were sold off in lots and the streets dedicated to the public in accordance with said survey, and that Jersey City has been built upon said premises. That the street next towards the river, known as Hudson street, was laid out and has always been but seventy feet wide, until extended by an ordinance of the defendants to one hundred feet, which the bill charges they had no right to do. That complainants under the rights vested in them created a

bulk-head along the front of their premises on the Hudson river in order to protect and benefit their property, which left a strip of about twenty feet wide between Hudson street, as laid out at seventy feet wide, and the river, and that they constructed their wharves and storehouses thereon and therefrom, for the Cunard steamers and others, and erected the small building or office thereon which they rented to Davidson, and also built a fence along the east side of Hudson street, considering it seventy feet wide. That the defendants, claiming the right to do so under their charter, passed an ordinance widening Hudson street to one hundred feet, for the purpose, as alledged, of extending said street to the water, and of erecting a ferry from some part thereof, and of covering and assuming the strip of land between Hudson street, as originally laid out, and the river, and of destroying the defendants' wharves, ferry and private property. The bill also states that the defendant Morgan, acting under the authority of the other defendants, pulled down the fence and threatened to remove the office in the occupation of Davidson and to prevent the rebuilding the fence.

On the filing of this bill an injunction to prevent the removal of the office only was granted. The defendants came in and answered, by which they substantially admitted the facts set forth in the bill, but deny the rights and powers of the complainants as claimed by them, and insist on the right and power of the defendants to proceed as they had done, in regard to Hudson street, and to the fence and other obstructions therein, after the street had been extended to one hundred feet wide. These rights and powers the defendants claim by virtue of several acts and supplements thereto, incorporating them as "The Mayor and Common Council of Jersey City," and the various ordinances passed in pursuance thereof. These and other matters incident thereto are set forth in the bill and answer, but it is unnecessary to repeat them here.

The first question for our consideration is, what rights did the appellants acquire under the Van Vorst deed and the act of incorporation? According to the common law rule assumed by counsel to be the rule of this case, the rights of riparian owners

extended only to high water mark, and all below that to the middle of the river, belongs to the State and not to the Proprietors as formerly supposed. The deed then from Van Vorst only conveyed the land to high water mark, the ferry and the appurtenances thereto, and the State had a right to grant all lands below that point, either for the purpose of building wharves and piers, or for occupation generally, either under water or by filling up the river so as not to interfere with the navigation.

By the third section of appellants' charter, they have conferred upon them the privilege of building docks and piers into the Hudson river and bays thereof opposite their premises " as far as they may deem it necessary for the *improvement of said premises* or the benefit of commerce, and to appropriate the same to their own use." The rights conferred by this section are conferred on the corporation, and not on Varrick, Radcliff and Dey, the first proprietors; although the term used is " said associates," omitting, by accident it is presumed, the words used in some other sections, " and their successors." The powers are such as could only be intended for the incorporation and not for these associates, and could only be executed and enjoyed by the incorporation.

This section confers on the corporation the right of docking out and filling up to the middle of the river, if they do not interfere with the public right of navigation, and they deem it necessary for the improvement of said premises or the benefit of commerce. Of course the docks or piers thus erected belong to the appellants, for they erect them by sanction of law, and the section authorizes them to appropriate them to their own use. Does this right of appropriation apply only to the timbers of the dock and the immediate landing place, or to the whole extent of the pier, from high water to its extreme termination? Unquestionably the latter, for the former were theirs already without this clause; and this appropriation may be for any lawful purpose, within their chartered rights, which the corporation " deemed necessary for the improvement of said premises or the benefit of commerce."

It is insisted that the term " said premises," means only the

lands above high water mark conveyed by Van Vorst, and that the power in the second section to lay out streets and squares " upon all and every part of said premises" is subject to the same restriction, and thereupon no matter how far appellants may extend their wharves, and though along their whole front, yet they have no power to lay out streets or squares or otherwise appropriate the newly acquired upland, except for docks or piers. Now if this position were correct, it does not necessarily follow, that the respondents would become thereby the owners of the property or acquire any rights, or be entitled to raise the question of right. But the position is not correct. By the term " premises," or " said premises" the Legislature intended, as they said in the first section, " the tract and premises herein before described, with the privileges and appurtenances aforesaid," referring to the description in the preamble to the act, which gives the metes and bounds of the land, and then adds, " together with the right of ferry from the said tract or parcel of land across the Hudson river, and the right and title of said Cornelius Van Vorst under the water of the Hudson river and the bays thereof opposite said premises, as far as the right of said Cornelius Van Vorst extends ;" and then the preamble states that the Associates had divided " the said premises into one thousand original shares." Divided what? The upland only? Certainly not, but the ferry also, the right, void or otherwise, to the land under water. Again, if the laying out streets and squares upon " all and every part of said premises," is to be restricted to the upland only, then the power to " regulate the building of all docks, piers and wharves and storehouses thereon" in the same section, must be restricted in like manner to the upland, or, if a pier is built to the middle of the river, there is no power given to the corporation to lay out a street from the upland to the foot of the pier, or indeed to connect the land with the water for any useful purpose. These views were not within the contemplation of the Legislature. They took the description of the premises with the appurtenances from the Van Vorst deed, and bearing in mind that as far back as 1804 it was the general impression, that riparian proprietors were the shore own-

ers and had the exclusive right to the land under water opposite their shore, for the purpose of docking or filling out, or acquiring the alluvial, we can have no difficulty in presuming that the Legislature intended by their charter to the associates, to confirm to them all the rights of the State, contained in the description and appurtenances of the Van Vorst deed. Such a power and grant was necessary in order to enable the Associates to execute the plan and objects which they had in view. We may then fairly conclude that all the rights of Van Vorst and of the State, to the lands described, &c., to the middle of the river, except the public right of navigation, vested in the appellants for the purpose of laying out streets and squares, the erection of docks or buildings, or for any other lawful purpose. This is the clear construction of the appellants' charter, and if they have restricted their rights by any subsequent act of dedication or otherwise, that is a question between them and their grantors on Hudson street, and not between them and the respondents.

It appears manifest that Hudson street, by Mangin's survey and map, was laid out seventy feet wide next to the Hudson river and so dedicated with the other streets to the public, and according to the principles before laid down, all outside of that, including the strip of twenty feet wide, the office thereon and the bulkhead belong to the appellants.

It is set up in the answer, and was urged with much force in the argument, that by virtue of their charter the defendants had a right to widen Hudson street, that by an ordinance it was widened to one hundred feet, and that the fence and office were obstructions within the street which they had a right to remove, and did in fact remove the fence and threaten to remove the office accordingly. In the second section of appellants' charter the Legislature provided " that the powers granted by this section (to lay out streets and squares and to regulate the building of docks and storehouses) shall cease whenever the Legislature shall deem it expedient to institute a more adequate and complete corporation for the purposes above expressed." This reserves in the Legislature full power on the subject. The present charter of Jersey City was passed February 22, 1838. In the

repeal of any part of the proviso contained in the second section of the act incorporating said Associates." Take this section in connection with the 13th section of respondents' charter and the second section of appellants' charter above stated, and there will be no great difficulty in coming to a fair conclusion. The right to lay out streets and squares specified in the second section, the appellants and the Legislature seem to have considered one of the vested rights of the appellants, which was not to be construed as interfered with or impaired, and then inasmuch as the 13th section embraces pretty much, if not all the other powers granted the Associates in the 2d section, the proviso is inserted so that it should not be construed as repealing the proviso in the Associates' 2d section ; the Legislature thereby reserving to itself the right to repeal and transfer to the respondents or others the right to lay out streets or squares or any other right in the 2d section of appellants' charter not before repealed or disposed of otherwise. Turning to the 13th section of respondents' charter, it is evident that the right to lay out streets and squares, or to widen or enlarge them, is neither taken from the appellants or given to the respondents. In the former the power is vested by their charter ; to the latter the power is given of passing ordinances for " regulating, cleaning and keeping in repair the streets, highways and public alleys therein"—" for preventing the encumbering or obstructing the streets, sidewalks and public alleys in said city"—" for ascertaining and establishing the boundaries of all streets and alleys in said city, and preventing and removing all obstructions in and upon said streets and alleys." These are mere powers of municipal regulation and give no power to lay out or widen any street or alley, or to take for that purpose the private property of the appellants or of any other person.

Nor is there any provision in the respondents' charter for carrying any such power into execution or to render it constitutional. The power to lay out and widen streets is still reserved to the appellants subject to their previous acts and grants, and must so remain until the Legislature shall see proper to make some constitutional provision to the contrary.

29th section, it is enacted " that nothing herein contained shall be construed as in any wise to interfere with or impair the vested rights and privileges of the Associates of the Jersey company, *Provided*, that this section shall not be adjudged or construed a

We come then to the irresistible conclusion that the respondents had no right to widen Hudson street.   1st. Not for the convenience or benefit of their city, for the power was not given to them in their charter.   2nd. Not for the purpose of acquiring the strip of land twenty feet wide, the bulkhead, the wharves or piers, or any other property of the appellants, because these constitute a portion of their vested rights under their charter and title deeds.   3rd. Not for the purpose of extending a public street to the Hudson river, in order to enable them to establish a ferry across said river ; because the right of ferry, of whatever character it be, is vested in the appellants by the Van Vorst deed of 1804, and confirmed by the act of the Legislature of the same year, and in its nature must be exclusive to the extent of appellants' land along and on the shore ; for no man has a right to establish a ferry and make the landing on another man's land without his consent ; nor according to the decision of Judge McLean, in Brownson's *Lessee v. Watham* (2 *McLean Rep.* 376 ; *Ang. on Tide Waters* 17) can the Legislature grant any such right, for it would be taking the land of one man and giving it to another, which cannot be done by legislation.   4th. Nor for any other purpose whatever had the respondents the right to widen said street ; nor did they acquire any right by such act to pull down the appellants' fence, remove their office or in any way hinder or obstruct them in their lawful rights.   The streets only and public places, by Mangin's map, were dedicated to the public and nothing beyond, which is unlike the cases of Cincinnati, Pittsburgh and New Orleans, where the strips next the water were dedicated to the public for a landing.   See the cases in 10 *Peters* 662 ; 6 *Ib.* 431 ; *Ib.* 498 *Ang. on Tide Waters* 188 (1).

I think therefore that the order below should be reversed, and the injunction be revived and so modified as to meet the views of

this Court and made perpetual, and that an order to this effect should be entered accordingly.

CARPENTER, J.   I concur in the same result.   It is proper to add that I do not concur in so much of the opinion delivered by Justice RANDOLPH as assumes that the title of the riparian owner extends only to high water mark.   The only express decision in this State is that in the case of *Bell v. Gough,* and that case is still *sub judice.*   In *Arnold v. Mundy* and in *Martin v. Waddell* the common law rule was referred to, and in both cases it was assumed to be the law of this State, but in neither case was this point directly involved.   The question whether a legal rule prevails in this State still seems to be open, and as it may soon be brought before this Court for adjudication, some of my brethren as well as myself, desire now to withhold any expression of opinion on this point.

The order dissolving the injunction was unanimously reversed.